UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

        Plaintiff,

v.                                                                          Case No. 11-cr-20752

D-1, Orlando Gordon,                                          Sean F. Cox
D-2, Vince Shivers,                                            United States District Court Judge
D-8, Anthony Hall, and
D-16, Markita Johnson,

        Defendants.
_____/

**OPINION AND ORDER
DENYING MOTION TO SUPPRESS FRUITS OF GPS SURVEILLANCE**

Over the course of a multi-year investigation, members of a task force, which included officers and agents from the Drug Enforcement Administration, the Bureau of Alcohol, Tobacco and Firearms, the Detroit Police Department and the Michigan State Police, used a variety of investigative techniques to determine whether the Defendants took part in a large cocaine distribution ring in Detroit. Those investigative techniques included physical surveillance, closed circuit television surveillance, wiretaps, confidential informants, undercover agents, listening devices, pen registry, trap and trace devices, search warrants, interviews, police reports, arrest reports, and trash searches. The Government also utilized GPS tracking devices as one of their investigative tools.

This matter is currently before the Court on Defendant Orlando Gordon's ("Gordon")

1

Motion to Suppress [Docket Entry No. 236], in which Defendants Vince Shivers ("Shivers"), Anthony Hall ("Hall") and Markita Johnson ("Johnson") have joined. The parties have briefed the issues, and the Court held evidentiary hearings on February 1, February 8, and February 22, 2013.

The Court shall **DENY** the Motion to Suppress because: 1) Gordon, Shivers, and Hall lack standing, and 2) although Johnson has standing regarding three of the vehicles, the good faith exception to the exclusionary rule applies.

## BACKGROUND

There are sixteen Defendants charged in this action, including Defendants Gordon, Shivers, Hall and Johnson. The Defendants are charged with conspiracy to possess with intent to distribute cocaine and marijuana, distribution of marijuana and crack cocaine, felon in possession of a firearm and ammunition, conspiracy to launder monetary instruments, and other crimes related to narcotics distribution.

**A.    Gordon's Motion to Suppress**

In his Motion to Suppress, Gordon contends that *United States v. Jones*, __ U.S. __, 132 S.Ct. 945, 181 L.Ed.2d 911 (2012), requires that "all evidence seized as a result of the illegal GPS surveillance, as well as all fruits of the surveillance, should be suppressed." (Docket Entry No. 236, at 8.)

In support of his motion, Gordon attached the following disclosure made in the Government's Response to Defendants' Motion to Compel Disclosure of GPS Tracking Documents and Reports [Docket Entry No. 222]:

| Driver | Vehicle | GPS tracker on | GPS tracker off |
|---|---|---|---|
| Orlando Gordon | 2004 Audi A8 (silver)<br>MI Plate #: BNK2313<br>VIN: WAUML44E44N001423 | June 2010 | July 2010 |
| Orlando Gordon | 2007 Lexus LS460 (blue)<br>MI Plate #: 7KGG71<br>VIN: JTHBL46F075022210 | November 2010 | January 2011 |
| Orlando Gordon | 2010 Audi A4 (blue/black)<br>MI Plate #: CCL1361 | August 2010 | December 2010 |
| Vince Shivers | 2011 BMW M6<br>GA Plate #: BNP0661 | November 2010 | January 2011 |
| Vince Shivers | 2007 Dodge Charger (black)<br>MI Plate #: CCV9101 | September 2010 | December 2010 |
| Derrick Terry | 1997 Hyundai Electra (red)<br>MI Plate #: 2GKS45 | August 2010 | November 2010 |
| Tamiko Hodo | 2007 Dodge Magnum (blue)<br>MI Plate #: CDM1022<br>VIN: 2D4FV47T07H728901 | July 2010 | August 2010 |
| Darren Terry | 2002 BMW 745i (black)<br>MI Plate #: BPZ8513 | June 2010 | August 2010 |

(Docket Entry No. 222, at 2; Docket Entry No. 236-1, at 1.)

Defendants Johnson, Hall, and Shivers joined in and/or concurred with Gordon's Motion to Suppress, but they did not provide any additional argument or authority in their respective "joinder" motions. (*See* Docket Entry Nos. 255, 274, 276.)

The Government responded the motion by asserting that (1) Gordon, Shivers, Hall and Johnson have not established standing to challenge the placement of the GPS devices on any of the vehicles, (2) the searches were reasonable and not in violation of the Fourth Amendment, (3) the law enforcement officers attached the GPS devices on a good faith understanding of the law, (4) the evidence was sufficiently attenuated from the GPS tracking data, and (5) the evidence would have been inevitably discovered and/or had an independent source. (Docket Entry. No. 256.)

**B.     Standard of Review**

The defendant has the burden of proving that his or her constitutional or statutory rights have been violated in order to justify suppression. *United State v. Rodriguez-Suazo*, 346 F.3d 637, 643 (6thCir. 2003); *United States v. Feldman*, 606 F.2d 673, 679, n. 11 (6th Cir. 1979) ("It is well settled that in seeking suppression of evidence the burden of proof is upon the defendant to display a violation of some constitutional or statutory right justifying suppression."). "[T]he Government's installation of a GPS device on a target's vehicle, and its use of that device to monitor the vehicle's movements, constitutes a 'search.'" *Jones*, __U.S.__, 132 S.Ct. at 949. Unless an exception applies, a warrant is generally required to permit law enforcement officers to search a place or seize an item. *United States v. McLevain*, 310 F.3d 434, 438 (6th Cir. 2002).

The decision whether to conduct an evidentiary hearing is within the discretion of the trial court. *See United States v. Lawson*, 476 Fed. App'x 644, 648, 2012 WL 806393, at *4 (6th Cir. March 13, 2012).

**C.     The Evidentiary Hearings**

    **1.     The February 1 and February 8, 2013, Evidentiary Hearings Addressing the Issue of Standing**

Gordon and Johnson contend that they have standing to challenge the placement of the GPS devices on the 2004 Audi A8 ("the 2004 Audi"), the 2007 Lexus LS460 ("the 2007 Lexus"), and the 2010 Audi A4 ("the 2010 Audi"). Shivers challenges the placement of the GPS devices on the 2011 BMW M6 ("the BMW") and the 2007 Dodge Charger ("the Charger"). Hall never disclosed the vehicles that he allegedly has standing to challenge the placement of the GPS devices upon.

Because standing is a threshold issue, and because the Government contended that Gordon, Shivers, Hall, and Johnson lack standing to challenge the placement of the GPS devices on any of

the aforementioned vehicles, the Court chose to begin with an evidentiary hearing to address the issue of standing.

The Government later stipulated, on the record, at the February 8, 2013, evidentiary hearing, that Johnson, as the registered owner of the 2004 Audi and the 2007 Lexus, has standing to challenge the placement of the GPS devices on those vehicles. (Docket Entry No. 302, at 142:8–21.) Certificates of title were presented to the Court as trial exhibits. The Government also stipulated that Johnson has standing to challenge the placement of the GPS device on the Audi 2010 A4. (*Id.*)

At the evidentiary hearings, Officer Carl Barton, Special Agent Patrick Browne, Officer Shawn Reed, Special Agent Andrew Holt, Special Agent James Soper, Officer Adam Tardif, and Officer Scott Harding were called to testify. The officers and agents were members of the task force that investigated the Defendants' alleged drug trafficking activities. Their names were previously disclosed in Government's Response to Defendants' Motion to Compel Disclosure of GPS Tracking Documents and Reports [Docket Entry No. 222], as the officers and agents who participated in placing and/or removing the GPS tracking devices on and from the vehicles in this action.

At the February 8th evidentiary hearing, the Government entered into the following stipulation with Shivers:

> It is hereby stipulated, between the Government and the Defendant Vince Shivers, that during the course of surveillance of Vince Shivers, he was observed on multiple occasions driving the following vehicles, including but not limited to the following dates:
> 1. 2011 BMW M6, GA Plate # BNP0661 - November 2010 through January 2011 and
> 2. 2007 Dodge Charger (black), MI Plate # CCV9101 - September 2010 through December 2010.

(Docket Entry. Nos. 300, 311.)

5

Defendants Gordon, Shivers, Hall, and Johnson did not testify at any of the evidentiary hearings.

### 2. The February 22, 2013, Evidentiary Hearing Addressing the Issue of Good Faith

The Court held an evidentiary hearing addressing the issue of good faith, noting that the Government stated in its response to Gordon's Motion to Suppress that the task force agents received advice, and approval, from legal counsel that their use of the GPS trackers was lawful. (Docket Entry No. 256, at 8–12.)

The Government called Special Agent Patrick Browne, who was the case agent assigned to the task force and was responsible for authorizing the use of GPS devices in the investigation.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Having heard and observed the witnesses who testified at the evidentiary hearing, allowing for this Court to assess credibility, having considered the arguments presented by counsel, and having applied the governing legal principles, the Court makes the following findings of fact and conclusions of law.[1]

## FINDINGS OF FACT

### 1. The 2004 Audi

Officer Carl Barton, Special Agent Patrick Browne, and Officer Shawn Reed each saw Gordon drive the 2004 Audi at some point, but they could not recall the specific dates. Special Agent Soper saw Gordon drive the 2004 Audi on August 11, 2010. The GPS device was placed on the 2004 Audi while it was located at Gordon's home in Franklin, Michigan.

---

[1] To the extent that a finding of fact is more properly a conclusion of law, and to the extent that a conclusion of law is more properly a finding of fact, it should be so construed.

**2.      The 2007 Audi**

Special Agent Browne and Special Agent Reed each observed Gordon drive the 2007 Lexus at some point, although they could not specify a date. Special Agent Holt saw Gordon drive the 2007 Lexus on November 29, 2010, and on some other unspecified date. Special Agent Soper saw Gordon drive the 2007 Lexus on several occasions while the GPS device was attached to that vehicle. Officer Adam Tardif witnessed Shivers drive the 2007 Lexus on or around December 1, 2010. The GPS device was placed on the 2007 Lexus while it was located at Gordon's home in Franklin, Michigan.

**3.      The 2010 Audi**

Special Agent Patrick Browne and Officer Shawn Reed saw Gordon drive the 2010 Audi on some unspecified date. Officer Scott Harding saw Gordon driving the 2010 Audi on August 12, 2010. The GPS device was placed on the 2010 Audi while it was located at Gordon's home in Franklin, Michigan.

**4.      The BMW**

Shivers was pulled over by a police officer while he was driving the BMW on December 1, 2010. Special Agent Holt, Special Agent Soper, and Officer Tardif saw Shivers driving the BMW on several occasions, but they did not provide any dates and do not know whether or not the GPS devices were attached to those vehicles at that time.

**5.      The Charger**

Officer Barton saw Shivers drive the Charger, but he did not provide any dates. He also saw Britney Vernor drive the Charger, as well. Special Agent Holt observed Shivers drive the Charger on multiple occasions, but he did not provide any specific dates.

Special Agent Patrick Browne was the case agent assigned to investigate the Defendants' alleged drug trafficking activities when the GPS trackers were affixed to the vehicles. He was assigned to that position sometime in 2008. Special Agent Browne was responsible for and, in some way, involved with the placement of every GPS device used in the investigation. He consulted Assistant United States Attorney Steven Cares, as well as his supervisors and other agents, about whether or not warrants were required for the placement of the GPS devices on the vehicles. Based on the legal advice from Mr. Cares, Special Agent Browne believed that he and the other agents were acting lawfully and did not need to obtain a warrant before placing a GPS device on a vehicle.

## ANALYSIS AND CONCLUSIONS OF LAW

The Court makes the following conclusions of law based on the evidence presented at the evidentiary hearings.

**1.  Hall Clearly Has Not Established Standing**.

Defendant Anthony Hall has not offered any evidence to establish that he has any ownership or possessory interest in any of the vehicles at issue; nor has he offered any evidence to establish that he ever drove, or even rode in, any of the vehicles at issue.

A defendant clearly lacks standing to challenge the placement of a GPS device on a vehicle that he does not own and has neither driven or occupied. *United States v. Shephard*, No. 11-6037, 2012 WL 3117413, at *5 (6th Cir. Aug. 1, 2012).

Accordingly, the Court concludes that Hall lacks standing to challenge the placement of the GPS device on any of the vehicles at issue.

**2.     Gordon and Shivers Have Failed to Establish Standing.**

A defendant can object to a search only if he or she has standing. *United States v. Davis*, 430 F.3d 345, 359–60 (6th Cir. 2005). The defendant "[bears] the burden of establishing [F]ourth [A]mendment standing." *United States v. Pino*, 855 F.2d 357, 360 (6th Cir. 1988). Each defendant's standing is analyzed independently in cases involving multiple defendants. *See United States v. Mastromatteo*, 538 F.3d 535, 544 (6th Cir. 2008).

Defendants Gordon and Shivers failed to meet their burden of establishing standing in this action. As mentioned before, Gordon challenges the placement of the GPS devices on the 2004 Audi, the 2007 Lexus, and the 2010 Audi. Shivers challenges the placement of the GPS devices on the BMW and the Charger. Gordon and Shivers have not established an ownership or a possessory interest in any of the vehicles.

To establish standing, Gordon called various officers and agents who participated in the investigation. Some of the officers remembered specific instances when they witnessed Gordon driving the vehicles, but, for the most part, were unable to provide definitive dates. At most, the Court concludes that Gordon has established that he infrequently (on several isolated occasions) drove the 2007 Lexus while the GPS device was attached to that vehicle, and may have driven the 2004 Audi and the 2010 Audi a few times when the GPS devices were attached to those vehicles.

With regard to the Charger and BMW, it is unclear based on the testimony of the officers and agents whether any of the them saw Shivers driving the Charger and BMW while the GPS devices were attached to those vehicles. For the most part, the officers and agents did not provide specific dates for their sightings. Though the officers did provide a few dates of sighting that coincide with the GPS devices being attached to the Charger and BMW, again, Shivers has only established that

those sightings were infrequent.

What the Court knows from the stipulation entered into between Shivers and the Government is that Shivers was observed "on multiple occasions" driving those vehicles. Similarly, the evidence establishes that Shivers drove the BMW and Charger on a few occasions while the GPS devices were attached to them.

A defendant who sometimes uses a vehicle, during the course of GPS surveillance, does not establish that the defendant has a reasonable expectation of privacy in the vehicle at all times. *United States v. Luna-Santillanes*, No. 11-20492, 2012 WL 1019601, at *6 (E.D. Mich. March 26, 2012). "That would be similar to the defendant in *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d (1967), arguing that he had a reasonable expectation of privacy in someone else's wiretapped conversation in a public telephone booth simply because he sometimes used that public telephone booth, along with two other telephone booths. Such an argument would turn 'the holding in *Katz* on its head . . . . [I]t is [a] Defendant['s] reasonable expectation of privacy in . . . [his or her] movements, not merely the movements of a vehicle they sometimes used, that triggers Fourth Amendment protections." *Id.*; *Jones*, 132 S.Ct. at 960, 64 (Alito, J., concurring) (citing *United States v. Knotts*, 460 U.S. 276, 281–82, 103 S.Ct. 1081, 75 L.Ed.2d 55 (1983)) ("[relative[]] short-term monitoring of a person's movements on public streets accords with expectations of privacy that our society has recognized as reasonable.").

Gordon and Shivers did not offer any evidence establishing that the registered owners of the vehicles gave them permission to drive any of the vehicles. The officers testified that they did not know if Shivers and Gordon had permission to drive those vehicles or not.

Under the reasonable expectation of privacy test, an individual generally lacks a protected

10

interest in a vehicle, and cannot challenge a search of it, where his or her possession of that vehicle is unlawful or without permission. *See e.g.*, *United States v. Smith*, 263 F.3d 571, 586 (6th Cir. 2001) ("We acknowledge that as a general rule, an unauthorized driver of a rental vehicle does not have a legitimate expectation of privacy in the vehicle, and therefore does not have standing to contest the legality of a search of the vehicle."); *see also United States v. Frederickson*, No. 90-5536, 1990 WL 159411 (6th Cir. Oct. 22, 1990); *United States v. Arango*, 912 F.2d 441 (10th Cir. 1990).

**3.     Markita Johnson Has Standing to Challenge the Placement of the GPS Devices on the 2004 Audi, the 2007 Lexus, and the 2010 Audi.**

At the evidentiary hearing, the Government stipulated that Markita Johnson has standing to challenge the placement of a GPS device on the 2004 Audi, the 2007 Lexus, and the 2010 Audi. (Docket Entry. No. 302, at 142:8–21.)

**4.     Attenuation/Inevitable Discovery/Independent Source Hearings Were Not Held because the Evidence that the Defendants Sought to Suppress Was Never Identified by the Defendants and the Court Concludes that the Good Faith Exception Applies.**

Because the Government stipulated that Johnson has standing with regard to three vehicles in this action, the Court planned to hold an attenuation/inevitable discovery/independent source hearing to allow the Government the opportunity to show that certain evidence Johnson asks the Court to suppress is sufficiently attenuated from the GPS tracking information, would have been inevitably discovered, or had an independent source. But, the moving Defendants, including Johnson, never specified what evidence they wished to suppress even though the Court issued an order requiring such disclosure. (*See* Docket Entry No. 268.) And, as specified in Docket Entry 299, the Court believes the Government's strongest argument is the good faith exception. Thus, the Court proceeded with an evidentiary hearing on that issue.

**5.    The Good Faith Exception to the Exclusionary Rule Applies to the Placement of the GPS Devices on all of the Vehicles.**

At the evidentiary hearing addressing the issue of good faith, Special Agent Patrick Browne stated that he received advice from legal counsel, as well as his supervisors and other agents, that warrants were not required when the GPS devices were placed on the vehicles in this action. Based on advice from legal counsel, he and the other task force officers and agents believed that they were acting lawfully in placing the GPS devices on the vehicles in this action without a warrant.

Special Agent Browne and the task force officers acted in good faith and in objectively reasonable reliance on the advice from counsel in placing the GPS devices on the vehicles in this action.[2]

The exclusionary rule's sole purpose is to "deter future Fourth Amendment violations." *Davis v. United States*, __U.S.__, 131 S.Ct. 2419, 2426, 180 L.Ed.2d 285 (2011) (internal citations and quotations omitted) (emphasis added); *see also United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). Exclusion is "not a personal constitutional right," nor was "it designed to redress the injury occasioned by an unconstitutional search." *Davis*, __U.S.__, 131 S.Ct. at 2426 (internal citations and quotations omitted).

For exclusion to be appropriate, the "deterrence benefits of suppression must outweigh its heavy costs." *Id.* at 2427 (citing *Herring v. United States*, 555 U.S. 135, 141, 129 S.Ct. 695 (2009)). The deterrent value is strong and tends to outweigh the resulting costs when "police exhibit 'deliberate,' 'reckless,' or 'grossly negligent' disregard for Fourth Amendment rights . . . ." *Id.*

---

[2] The Court did not address whether the placement of the GPS devices on the vehicles in this action was a "reasonable" search because the Court believes that the good faith exception to the exclusionary rule is applicable in this action.

(citing *Herring*, 555 U.S. at 144, 129 S.Ct. 695). "But when the police act with an objectively reasonable good-faith belief that their conduct is lawful, or when their conduct involves only simple, isolated negligence, the deterrence rationale loses much of its force, and exclusion cannot pay its way." *Id*. at 2427–28. (internal citations and quotations omitted); *see also Herring*, 555 U.S. at 144, 129 S.Ct. 695; *Leon*, 468 U.S. at 918–26, 104 S.Ct. 3405; *Pa. Bd. of Prob. and Parole v. Scott*, 524 U.S. 357, 362–63, 118 S.Ct. 2014, 141 L.Ed. 344 (1998).

Relying on *Leon* and *Herrings'* police-deterrent rationale, the Sixth Circuit, in *United States v. Buford*, held that "exclusion is not the appropriate remedy when an officer reasonably relies on a United States Court of Appeals' well-settled, [unequivocal] precedent prior to a change of that law. The fact that appellate precedent is later overturned is not enough to justify suppression, since the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges . . . . A police officer who reasonably relies on settled circuit precedent that authorizes the search . . . acts in objective good faith." *United States v. Buford*, 632 F.3d 264, 276–77, n. 9 (6th Cir. 2011) (internal citations and quotations omitted).

The Supreme Court reached a similar conclusion four months later in *United States v. Davis*, holding that, "when binding appellate precedent specifically *authorizes* a particular police practice, well-trained officers will and should use that tool to fulfill their crime-detection and public-safety responsibilities. An officer who conducts a search in reliance on binding appellate precedent does no more than act as a reasonable officer would and should act under the circumstances . . . . The deterrent effect of exclusion in such a case can only be to discourage the officer from doing his duty . . . . That is not the kind of deterrence the exclusionary rule seeks to foster." *Davis*, 131 S.Ct. at 2429 (internal citations and quotations omitted) (emphasis added). Applying these principles, the

13

Supreme Court held that "the harsh sanction of exclusion should not be applied to objectively reasonable law enforcement activity . . . . Evidence obtained during a search conducted in reasonable reliance on binding precedent is not subject to the exclusionary rule." *Id.* at 2428–29 (internal citations and quotations omitted).

In *Buford* and *Davis*, the Supreme Court and the Sixth Circuit never foreclosed the possibility that officers may, in good faith, rely on the "unequivocal" or "settled" precedents of other circuits. Instead, both the Supreme Court and the Sixth Circuit recognized that the underlying purpose of the exclusionary rule was to deter police conduct that exhibits "deliberate," "reckless," or "grossly negligent" disregard for Fourth Amendment rights, as opposed to redressing the constitutional violations. *Davis*, –U.S.–, 131 S.Ct. at 2427–29 (citing *Herring*, 555 U.S. at 144, 129 S. Ct. 695) ("Under our exclusionary-rule precedents, this acknowledged absence of police culpability dooms Davis's claim."); *see also Buford*, 632 F.3d at 270–71.

Like the officers in *Buford* and *Davis*, the officers' conduct in this action was neither deliberate, reckless nor grossly negligent. Instead, they had an objectively reasonable basis for believing that the attachment of the GPS device on the vehicles without a warrant was permissible under the Fourth Amendment. Although there is no binding Sixth Circuit precedent addressing the issue of whether the placement of a GPS device on a vehicle constitutes a search under the Fourth Amendment at the time the GPS devices were attached to the vehicles, the United States Courts of Appeals uniformly held that such conduct did not constitute a search under the Fourth Amendment. *See e.g.*, *United States v. Marquez*, 605 F.3d 604 (8th Cir. 2010); *United States v. Garcia*, 474 F.3d 994, 996–98 (7th Cir. 2007); *United States v. McIver*, 186 F.3d 1119, 1127 (9th Cir. 1999); *United States v. Michael*, 645 F.2d 252 (5th Cir. 1981). In fact, at that time, no circuit held that the

placement of a GPS device on a vehicle was proscribed by the Fourth Amendment until August 6, 2010, *see United States v. Maynard*, 615 F.3d 544 (D.C. Cir. 2010), after most of the GPS devices were installed on the vehicles in this action. Likewise, *Jones* was not decided by the Supreme Court until January 23, 2012, which is more than a year after the GPS devices were removed from the vehicles in this action.

The Supreme Court's decision in *Jones* represents an unexpected development that has shifted law enforcement's understanding of the Supreme Court's prior holdings in the electronic beeper cases, *see e.g.*, *United States v. Knotts*, 460 U.S. 276, 103 S.Ct. 1081, 75 L.Ed.2d 55 (1983), and *United States v. Karo*, 468 U.S. 705, 104 S.Ct. 3296, 82 L.Ed.2d 530 (1984), and the Sixth Circuit's applications of those cases under the reasonable expectation of privacy test. When considering the task force officers' reliance on the beeper cases with the fact that the Courts of Appeals uniformly held that the placement of a GPS device on a vehicle does not constitute a search when most of those devices were attached to the vehicles, this adds more support that the officers' beliefs were objectively reasonable.

The Sixth Circuit in *United States v. Jarrell*, 68 Fed. App'x 622, 2003 WL 21500171 (6th Cir. 2003), provides persuasive authority to support the extension of the good faith doctrine in this action. In *Jarrell*, a law enforcement officer used information from a thermal-imaging device in his affidavit for a search warrant. *Id.* at 625–26, 2003 WL 21500171, at *1–3. Jarrell filed a motion to suppress based on the Supreme Court's decision in *Kyllo v. United States*, 533 U.S. 27, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001), which held that the use thermal imaging constitutes a search under the Fourth Amendment. *Jarrell,* at 625, 2003 WL 21500171, at *2.

*Kyllo* was issued after the officer used the thermal imaging device. *Id.* at 625–26, 2003 WL

15

21500171, at *2–3. At the time when the officer filed his affidavit, the Sixth Circuit never addressed that issue, instead the officer relied on the precedent of other circuits that held that the use of a thermal imaging device does not constitute a search under the Fourth Amendment. *Id.*

The Sixth Circuit applied the good faith exception to the officer's reliance on the other circuits, stating in relevant part:

> [In his affidavit,] Agent Watters relied on the informant's tip, his surveillance of the home, his experience in law enforcement, the power usage record, and the thermal imaging. At the time Agent Watters used the thermal imaging, the issue of whether a thermal imaging constituted a search under the Fourth Amendment had not been decided by the Sixth Circuit . . . ; however, several other circuits had found that the warrantless use of thermal imaging on properties ranging from out buildings to homes was constitutional under the Fourth Amendment . . . . Only the Tenth Circuit at the time had found that the use of thermal imaging constituted a search thus requiring a warrant under the Constitution . . . . Subsequently, the Supreme Court in *Kyllo* held that thermal imaging does constitute a search . . . . In the case at bar, the district court applied *Kyllo* and decided that without the thermal imaging, probable cause did not exist for the warrant, but a basis for supporting the admission of the evidence did exist through the *Leon* good faith exception.
> Jarrell argues that because there was a split in the circuit courts regarding use of thermal imaging at the time the warrant was issued, Agent Watters's reliance on the warrant, which included the thermal imaging, was not made in good faith. The Court disagrees. Aside from the thermal imaging, Agent Watters also relied on the informant's tip, his corroboration of the informant's information, the electrical power usage records, and his knowledge as a police officer with experience in the area of marijuana growing cases. Therefore, even if Agent Watters had not considered the thermal imaging evidence, his actions cannot be characterized as unreasonable. Furthermore, his reliance on the thermal imaging evidence at the time when courts of appeals disagreed on the use of such imaging in the context of the Fourth Amendment cannot be said to be objectively unreasonable.

*Id.*

The Court also finds persuasive several district court decisions in the Sixth Circuit that have applied the good faith exception to the placement of GPS devices on a vehicle driven by a defendant, *see United States v. Fisher*, No. 2:10-cr-28, 2:10-cr-32, 2013 WL 214379, at *2 (W.D. Mich. Jan. 18, 2013) ("The Supreme Court in *Davis* focused on the lack of police culpability as dooming

Davis's claim . . . . In the present cases, there is similarly a lack of police culpability. The decisions from the courts of appeals of other circuits at the time of the GPS installations had uniformly found that GPS tracking was not a Fourth Amendment search. Furthermore, . . . the beeper cases [, *Knotts* and *Karo*, ] . . . and the Sixth Circuit cases interpreting those decisions provided guidance to law enforcement . . . . The precedent from the other courts of appeals on the GPS issue, combined with the beeper cases, was sufficient to create an objectively reasonable good faith belief that the attaching of the GPS devices was lawful."); *United States v. Ford*, No. 1:11-CR-42, 2012 WL 5366049 (E.D. Tenn. Oct. 30, 2012) ("[T]he Court believes a rule limiting *Davis* to binding precedent ignores the underlying rationale in *Davis* and *Herring*. The Court did not simply hold law enforcement acted reasonably by relying on binding law, but also acknowledged the officer's reasonable reliance rendered his conduct inculpable . . . . The question for the Court is whether Taylor's action was such a deliberate, reckless, or grossly negligent disregard of Fourth Amendment rights the value of deterring it outweighs the costs to the judicial system of excluding the resulting evidence . . . . Taylor's actions here do not meet that standard.").

Likewise, the Court considered dicta from District Court Judge Nancy Edmunds' recent decision in *Luna-Santillanes*, *et al.*, 2012 WL 1019601, *9, n. 5 ("In light of the Court's decision, it is unnecessary to consider the government's additional argument that, because the use of a GPS device on a vehicle without first obtaining a search warrant was a widely-accepted practice in the police community that had not been held unconstitutional by the Sixth Circuit Court of Appeals, the *Leon* good faith exception to the exclusionary rule would apply. If this Court were to consider this additional argument, it would find it persuasive. As the United States Supreme Court recently held in *United Sates v. Davis*, --- U.S. ---., 131 S.Ct. 2419, 2423–2424, 180 L.Ed.2d 285 (2011), 'because

suppression would do nothing to deter police misconduct in these circumstances, . . . searches conducted in objectively reasonable reliance on binding appellate precedent are not subject to the exclusionary rule. *Id.* at 2423.'").

The Court holds that the good faith exception to the exclusionary rule is applicable to the task force officers' objectively reasonable, good faith beliefs that their conduct in placing the GPS devices on the vehicles in this action without a warrant was lawful.

## CONCLUSION AND ORDER

Gordon, Shivers, and Hall lack standing. The good faith exception to the exclusionary rule applies to the placement of the GPS devices on all the vehicles in this action, **IT IS ORDERED** that the Motion to Suppress Fruits of GPS Surveillance [Docket Entry No. 236] is **DENIED**;

Accordingly, **IT IS FURTHER ORDERED** that the Court **DENIES** Shivers' [Docket Entry No. 276], Hall's [Docket Entry No. 255] and Johnson's [Docket Entry No. 274] joinders in and/or concurrences with the Motion to Suppress Fruits of GPS Surveillance.

**IT IS SO ORDERED**.

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: March 4, 2013

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 4, 2013, by electronic and/or ordinary mail.

S/Jennifer McCoy
Case Manager